SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-1008

LEVI JOHNSON

APPELLANT

V.

HEATHER JOHNSON CHEATHAM

APPELLEE

**OPINION DELIVERED** MAY 14, 2014

APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT
[NO. 23DR-2011-953]

HONORABLE HARRY G. FOSTER, JUDGE

REVERSED

## ROBERT J. GLADWIN, Chief Judge

Levi Johnson appeals the July 16, 2013 order of the Faulkner County Circuit Court denying his contempt motion and request for attorney's fees and forbidding contact between the parties' child, MGJ, and the paternal step-grandfather. Johnson contends that the trial court erred by forbidding contact with the paternal step-grandfather because there was no pleading making such a request and no evidence presented. We reverse.

The parties were divorced by decree filed November 15, 2012, and by agreed order of the same date, appellee Heather Johnson Cheatham was granted custody of MGJ, born April 26, 2010, and Johnson was granted visitation. No restrictions regarding the step-grandfather were included in either order.

Johnson filed a contempt petition on January 23, 2013, alleging, among other claims, that Cheatham had refused to allow visitation since she had filed a petition for order of protection against MGJ's step-grandfather, Raul Salas. In her response, Cheatham admitted

to filing an order of protection against Salas and refusing visitation. She asserted that she was also forced to file an order of protection against the paternal grandmother due to a sexual allegation made by the child against Salas. She claimed that it was Johnson's "lack of care and concern about the sexual allegations" that concerned her about the child's well being in Johnson's care.

At the March 7, 2013 hearing on the contempt petition, Cheatham testified that Johnson had missed three weeks of visitation because she would not allow it, although she had not filed anything to amend visitation. She said that she kept MGJ away from Johnson because she felt that the child was not safe with him, as she did not trust him to keep MGJ from his mother and Salas. She claimed that when she received the letter in which Johnson reassured her that he would not have MGJ around his mother or Salas, she allowed visitation to resume.

She explained that she obtained an order of protection against Johnson's mother and Salas, but was not able to obtain an order against Johnson "because there was no allegation that Mr. Johnson did anything sexually toward her. The allegation was against his step-father." She testified that during their marriage, the parties did not allow their daughter to be around Salas because they felt he was abusive to Johnson's mother.[1] She admitted that since Johnson's letter of assurance that he would protect the child, visitation had resumed and

---

[1] Johnson's attorney objected to testimony regarding what took place before the divorce based on res judicata and irrelevancy, as there was "no order in place denying him visitation." The trial court ruled that the testimony was admitted for the purpose of determining what Cheatham believed or was thinking when she violated the court order, not for the truth of the matter asserted.

she did not have any other concerns about her daughter when she was with Johnson. A final hearing on the petition for order of protection had not yet been held.

Johnson testified that he missed three weekends of visitation and asked that he be allowed to make up the lost visitation time. He said that since he filed the contempt motion, he had been allowed to resume visitation, and he asked for his attorney's fees. On cross-examination, he testified that if his daughter had been molested by Salas, it was while she was in his own care. He claimed that he did not remember if he had prevented their daughter from visiting his mother and Salas while he and Cheatham were married.[2] He said that his mother was not abused, that he never heard that she had been abused, and that he never made the statement that he would "whoop [Salas's] ass if [he] got the chance." He admitted that during their marriage, Cheatham would never allow their daughter to be around his mother and Salas.

The trial court ordered that over the following sixty days, Johnson would be allowed to make up the missed visitation with his daughter. The court took the issue of contempt

---

[2]Johnson's attorney objected, stating, "I understand the Court's ruling on that. It is completely irrelevant. What we are here for today are orders of the Court." After hearing argument, the trial court ruled that, because the issue before the court was contempt, what the parties believed was relevant. The trial court stated,

> Again, the testimony that I am hearing goes to allegations of numerous bad acts. I am not taking that evidence as probative that any of those acts took place. I am taking the testimony of the witnesses for the purpose of showing what they reasonably believed and based on my opportunities to observe the witnesses, I'm making a determination as to their credibility with regard to what they believe. So for the purpose of giving the Court information that is relevant to the ultimate determination, I am going to overrule the objection and allow the question for the limited purposes that I have outlined.



under advisement and stated, "I have not made a decision about the validity of the allegations against Mr. Johnson's mother and step-father, but I believe that Ms. Cheatham believes them." The court further reasoned:

> I realize the order of protection is not in this case, but until that issue is resolved, I am going to incorporate certain aspects of that order into my order in this case to this extent: I direct that Mr. Salas is not to be around the child. I am going to allow Ms. Salas to have visitation with her granddaughter. I am going to provide that that visitation be supervised, and I charge Mr. Johnson with the responsibility for seeing to it that when his mother is busy with the child, that Mr. Salas not be anywhere around, and that he supervises that visitation. While the allegations are being addressed in the proper forum, I am telling the two parents to do what both of them are smart enough to do . . . The problem with Mr. Johnson's mother having visitation is based on the concern that she will not adequately protect her and keep Mr. Salas away from her.

These findings were memorialized in an order filed April 17, 2013.

At the review hearing held on June 17, 2013, counsel for Johnson explained that they were meeting to determine whether Cheatham was going to be found in contempt and ordered to pay attorney's fees. He said that the Arkansas State Police had found that the allegations against Salas were unsubstantiated and that the order of protection had been dismissed. He argued that his client's contempt petition and the question of attorney's fees were the only things pending before the trial court, as Johnson had not filed any pleading seeking modification of visitation as to Johnson's mother or Salas.

Counsel for Cheatham responded,

> The court heard other evidence of abuse at the last hearing and made the decision that the grandmother's visitation would be supervised and that Mr. Salas could not be around the child. We are asking that that remain the same. Mr. Salas is a step-grandparent, and Ms. Johnson [Cheatham] has protected her child.

Counsel for Johnson responded that there was no petition in front of the court and no evidence of the allegation of abuse. He continued,

> We are here because Ms. Johnson [Cheatham], instead of filing a petition, just on her own didn't allow Mr. Johnson to have visitation. There are ways to do that, and if she thought that there was an emergency, she should have filed a petition. If we hadn't filed a petition for contempt, Mr. Johnson still probably wouldn't be getting visitation. That is why we are here—a petition for contempt. There is nothing before the court that there was any sexual abuse by the step-grandfather, except argument.

Counsel for Cheatham argued that the trial court's authority to grant the relief she requested was based on its plenary powers to protect the child, regardless of whether a specific petition had been filed. She claimed that her client responded to the petition and presented evidence of why the child was not allowed to go for visitation. She requested that Salas have no contact with the child.

The trial court explained that it would review its notes to make certain that it had not presumed some facts that were not supported by evidence before issuing its final order. By order filed July 16, 2013, the trial court found that Cheatham was not in contempt because her denial of Johnson's visitation was reasonable and justifiable. Johnson's request for attorney's fees was denied. The order states:

> 5.   The Court finds, after reviewing the testimony presented at the previous hearing, judging the credibility of the witnesses and weighing their testimony that it would be in the best interests of the minor child to forbid any contact between the minor child and the paternal step grandfather.
>
> 6.   The Court finds that the paternal grandmother can have unsupervised visitation with the minor child; but, is prohibited from taking the child any where around or near the paternal step grandfather.

From this order, Johnson filed a timely notice of appeal.

Child–visitation cases are reviewed de novo on the record and will not be overturned unless clearly erroneous. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). Johnson's sole point on appeal is that the trial court erred by forbidding contact between MGJ and Salas because Cheatham did not file a petition to modify visitation and there was an absence of evidence presented on the issue.

Cheatham responds that the trial court had a duty to exercise its plenary power to impose a restriction on Johnson's visitation when the issue was raised by his motion for contempt and the evidence showed a change of circumstances that it was in the child's best interest to restrict contact with Salas. *Stinson v. Stinson*, 203 Ark. 888, 159 S.W.2d 446 (1942).

She contends that the trial court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or of facts not known to it at the time of the initial order. *Meins v. Meins*, 93 Ark. App. 292, 218 S.W.3d 366 (2005) (where issue of visitation was heard based on a contempt motion seeking restricted visitation). She also cites Arkansas Rule of Civil Procedure 15 (2013), arguing that when an issue is before the court, though not specifically requested in a pleading, the trial court may deem the pleadings amended even after the trial is concluded.

Cheatham cites *Brown v. Ashcraft*, 101 Ark. App. 217, 272 S.W.3d 859 (2008), where the father filed a contempt petition against the mother alleging that she had refused to allow him visitation. The circuit court denied the petition, but removed a condition in a previous visitation order requiring that the father be present during his visitation with the child and

not be absent for extended periods of time or overnight. *Brown*, *supra*. On appeal, our supreme court held that the trial court's removal of a condition in a previous visitation order was consistent with the court's continuing responsibility in visitation matters. *Id*. We note that in *Brown*, *supra*, the supreme court held that the issue of modification was tried by consent because the mother never objected at trial or on appeal that the modification was entered without petition nor that consideration of the modification was improper. *Id*. at 219–20, 272 S.W.3d at 861–62.

Nevertheless, Cheatham urges that the instant case is similar to *Brown*, *supra*, in that the only issue before the trial court here was the reasonableness of Cheatham's restriction of visitation because of Johnson's delegation of his supervisory duties to the step-grandfather. She contends that the trial court found that this delegation was a change of circumstances and found that her request for continued restriction of the paternal step-grandfather's contact with the minor child was in the child's best interest. She argues that evidence of a material change of circumstances was before the trial court, as Johnson testified that, if the child had been molested by his step-father, it was while she was in Johnson's custody. Cheatham testified that she and Johnson had not allowed the child to go to her grandmother's home during their marriage. She also said that the restrictions were based on their knowledge of the step-grandfather's abusiveness. On the other hand, Johnson testified that he did not recall whether he had allowed their daughter to be around his mother and Salas. Cheatham points to our deference to the superior position of the trial court to view and judge the credibility of the witnesses, *Nichols v. Teer*, 2014 Ark. App. 132, ___ S.W.3d ___, and urges us to affirm.

Johnson discusses *James v. James*, 52 Ark. App. 29, 914 S.W.2d 773 (1996), where relief was granted to the appellant's former wife, even though she had not filed a pleading asking for relief. Johnson distinguishes the instant case, arguing that the trial court here went beyond the parties' divorce decree and addressed issues that were not raised by the pleadings or tried by express or implied consent of the parties. He insists that no evidence as to any restrictions on visitation was presented to the trial court for the purpose of restricting visitation. He argues that the evidence presented was only considered by the trial court for the purpose of considering what Cheatham believed when she refused to allow the court-ordered visitation in its determination of whether to hold her in contempt. Thus, he contends that he had no notice that restrictions would be placed on his visitation. He argues that if he had been given notice, he would have called witnesses whose testimony would address the allegations of abuse.

We agree that there was a lack of evidence presented to the trial court for visitation to be modified. There was no testimony regarding the allegations against the step-grandparent, no testimony regarding the alleged investigation by the Arkansas State Police, and no opportunity for Johnson to submit evidence on the issue of visitation modification. Accordingly, we reverse the trial court's order modifying visitation as it was clearly against the preponderance of the evidence.

Reversed.

GLOVER and HIXSON, JJ., agree.

*Osment & Winningham, PLLC*, by: *Joe Don Winningham*, for appellant.

*Helen Rice Grinder*, for appellee.