

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-180

|  |  |  |
|---|---|---|
| RAYNE PHILLIPS | | **Opinion Delivered** September 24, 2014 |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63DR 2010-60-4] |
| V. | | |
| | | HONORABLE ROBERT LEO HERZFELD, JUDGE |
| DAVID PHILLIPS | | |
| | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Rayne Phillips seeks a reversal of the August 7, 2013 and November 8, 2013 orders of the Saline County Circuit Court. Appellant argues that the circuit court erred in finding her in contempt, limiting her visitation rights, and imposing attorney's fees to be paid by her. We affirm.

Appellant and appellee David Phillips are the parents of three minor children, and pursuant to a previous order of the circuit court, appellee has primary custody subject to the visitation rights of appellant. When appellee originally was awarded custody, appellant was granted standard visitation of every other weekend, certain holidays, and summer. Approximately two months later, the circuit court found appellant in contempt of court, sentenced her to thirty days in jail with twenty-eight days suspended, limited visitation for thirty days to four hours on every other Saturday and Sunday, and required the visitation to

be supervised. Without any further incident during the thirty-day period, the visitation would be every other weekend but would still be supervised. Five months later, appellant's visitation with the minor children was limited to supervised visits of four hours on every other Saturday and Sunday. Within three months of the entry of the order, appellee filed yet another motion for contempt and to terminate visitation. After appellant filed a response to the motion, the circuit court held two hearings on the motion.

At the hearings, appellee testified about negative communications made by appellant to him and to the children and also presented exhibits of the communications. Appellant did not dispute the fact that she sent the communications, but she explained that during the period between the two hearings she sought counseling and completed anger-management and transparenting classes. The record indicates that there were no additional negative comments around the children during this time period.

Following the hearings, the circuit court entered an order finding appellant in contempt of court. She was sentenced to twenty-eight days in jail, her visitation was limited to four hours every other Sunday, and she was ordered to pay $2500 in attorney's fees. Appellant filed a timely notice of appeal.

Child-visitation cases are reviewed de novo on the record and will not be overturned unless clearly erroneous. *Johnson v. Cheatham*, 2014 Ark. App. 297, 435 S.W.3d 515. The circuit court maintains continuing jurisdiction over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or of facts not known to it at the time of the initial order. *See id*. This turns largely upon the credibility

of the witnesses; though the appellate court typically defers to the superior position of the circuit court to determine credibility. *Id.* Here, as in *Sharp v. Keeler*, 103 Ark. App. 233, 288 S.W.3d 256 (2008) ("*Sharp II*"), and *Fitzpatrick v. Fitzpatrick*, 29 Ark. App. 38, 776 S.W.2d 836 (1989), the circuit judge was familiar with the parties because they had been before him several times.

This court in *Albarran v. Liberty Healthcare Management*, 2013 Ark. App. 738, 431 S.W.3d 310, noted that the proper standard of review of a contempt order depends on the type of contempt. The court stated:

> The standard of review in contempt cases depends on the kind of contempt that is at issue. Contempt is divided into criminal contempt and civil contempt. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. This is the source of the familiar saying that civil contemnors "carry the keys of their prison in their own pockets."

*Albarran*, 2013 Ark. App. 738, at 3–4, 431 S.W.3d at 313 (internal citations omitted). Although a sentence of twenty-eight days in jail was imposed on appellant by the circuit court, we hold that the substantial-evidence standard of review for a criminal contempt is not applicable in this case. The *Albarran* case, as with the current case, involved the circuit court directing a litigant to do something—in *Albarran* to pay attorney's fees, and here to comply with the circuit court's directives concerning negative communications directed toward appellee and the parties' children. The imposition of punishment in both cases was postponed pending compliance. That suspension or delay, as held specifically in *Albarran* and

in this case, was itself intended to be, and was, coercive pending the party's failure to comply. At some point appellant demonstrated that the sanction had not coerced her behavior, and the later imposition of the sentence does not convert it into a criminal contempt.

There is a less stringent standard to sustain civil-contempt orders. In *Dennison v. Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974), the Arkansas Supreme Court noted that civil-contempt orders are reviewed on appeal to determine whether they are arbitrary or against the weight of the evidence, as opposed to the substantial-evidence standard of review for criminal-contempt orders. The *Dennison* court clarified that, under either standard, on appeal, every presumption must be indulged in favor of the circuit court's judgment. *Id*.

## I. *Incarceration*

Appellant was originally punished for contempt in October 2012 by the imposition of a sentence of thirty days in jail with twenty-eight days suspended, provided that she continued to obey the orders of the circuit court. The circuit court's November 8, 2013 order states that "the Court hereby imposes the remaining 28 days of that 30 day suspended sentence of incarceration previously imposed for prior such contempts." Appellant claims that the circuit court was without authority to impose the suspended sentence.

She cites *Higgins v. Merritt*, 269 Ark. 79, 80, 598 S.W.2d 418, 419 (1980), for the argument that an attempt to suspend the execution of a sentence for contempt of court, other than a mere postponement, is invalid and amounts to a complete remission of the punishment. *See also Sharp II*, *supra*. Alternatively, assuming that the circuit court had the authority to impose a new sentence for her violation of the circuit court's orders, appellant

4

urges that the amount of jail time imposed was excessive. She maintains that when there are mitigating circumstances, as there are here, and the ends of justice can be adequately sustained by the serving of some part of a jail sentence, our practice has been to modify the judgment by reducing the punishment imposed. *See Dennison, supra.* Appellant argues that her attempt to seek professional help and her change of behavior since the first hearing constitute mitigating circumstances that should be considered by the court and that, at a minimum, the amount of jail time imposed for contempt should be reduced.

We find no error and affirm the circuit court's findings on this issue. Although a circuit court cannot indefinitely suspend a contempt sentence, it can conditionally postpone it. *See Kilman v. Kennard*, 2011 Ark. App. 454, 384 S.W.3d 647. In the current case, the circuit court repeatedly made clear that the previously postponed sentence remained capable of being imposed, specifically conditioned on appellant's future harassing or alienating behavior. While in some cases Arkansas appellate courts have sustained findings of contempt but reduced the punishments, that usually occurs on the basis that the deterrent effect had already been accomplished. We note that here, the deterrent effect was not met by the serial progressive prior sanctions ordered in this case. Accordingly, we hold that incarceration for such repeated disrespect toward the circuit court, as well as the defamatory comments toward the opposing party and his new wife, and to the children, is appropriate. *See Williams v. Ramsey*, 101 Ark. App. 61, 270 S.W.3d 345 (2007).

As to severity of punishment, we hold that the twenty-eight-day incarceration imposed was not arbitrary or against the weight of the evidence, particularly in light of the

5

history of this case. The evidence before us supports the punishment imposed by the circuit court after multiple and consistent prior warnings and sanctions. Additionally, in scheduling the time to be served on Saturdays, with an option to serve her sentence in advance, the circuit judge attempted to ensure appellant's punishment conflicted neither with her job nor the visitation time she still enjoyed with the children and was as "convenient" as possible for her.

## II. *Limitation on Visitation*

Appellant next argues that the circuit court attempted to further punish her by limiting her visitation rights. Her visitation went from standard visitation to four hours' supervised visitation every other Saturday and Sunday, to four hours' supervised visitation every other Sunday. An order regarding custody or visitation cannot be modified to reward or punish either party, *see Fitzpatrick, supra*, and appellant claims that here, visitation was not limited in the best interest of the children, but rather for the purpose of punishment. Appellant notes that appellee acknowledged that the children want to see her, and she claims that the continued reduction in her visitation rights is not improving the situation between the parties.

Appellant acknowledges that the circuit court included specific language in its order that the further limitation in visitation was in the best interest of the children. But she claims that the mere use of the language does not mean there was an actual showing that the further limitation on visitation was in the best interest of the children. Appellant maintains that there

6

is no evidence in the record that the children were actually harmed by her actions, even though, in addressing the issue, the circuit court stated:

> And I don't agree at all with Ms. Skarda's characterization that there's been no harm to the children. It would be impossible for them not to have been affected negatively by the despicable things that Ms. Phillips has done and said to them about their family and to them about their role in her being punished and their role in minimizing or limiting her ability to see them. That will carry with them the rest of their lives. There is no doubt in my mind. For anybody to say otherwise – – well, I think it's on its face just terribly, terribly wrong.

Appellant urges that the circuit court's conjecture is not sufficient and that there must be concrete proof of likely harm to the children. *Moix v. Moix*, 2013 Ark. 478, 430 S.W.3d 680. She claims that none was presented in this case, and the circuit court erred in further limiting her visitation.

In *Boudreau v. Pierce*, 2011 Ark. App. 457, 384 S.W.3d 664, we held that contempt should be first used to address minor visitation issues, and that supervision or other curtailment of visitation should be reserved for the extraordinary case. Here, in addition to the written orders entered in this case, appellant had been admonished directly by the circuit court in at least the three hearings held March 1, 2013, July 22, 2013, and October 21, 2013, referencing the prior warnings that led to the circuit court's earlier orders. This matter was the fifth time the parties had returned to circuit court since their January 2011 divorce, and each time related to the same issues.

Appellant's verbal assaults continued to place the children in the middle of proceedings telephonically, and by electronic correspondence directed to the children, before and after the July 22, 2013 hearing. Appellant repeatedly referred to appellee and his family

as "liars," "bastards," and "dumb-ass people." Appellant's activities that were the subject of these proceedings occurred long after she attended the transparenting class, took anger-management classes, and even as counseling was ongoing. Appellant's testimony on July 22, 2013, proves that, even at that point in the proceedings, she at best still did not understand what constituted proper communication, and at worst could not restrain herself from engaging in inappropriate communication.

We distinguish *Moix*, *supra*, because appellant's pattern of communication at issue here was objectively and specifically intended to undermine and erode the children's respect and love for appellee and his family. In *Moix*, the father's partner, exposure to whom formed the basis of the complaint, was described as "loving," "caring," and "fun." Even the supreme court, in its ruling limiting contact between children and the allegedly "harmful influence," indicated that he posed "no threat to the health, safety, or welfare" of the children. No similar characterization can be made of appellant's statements, and no expert testimony or further translation is required to prove that the communications were harmful on their face to the children to whom they were directed. In limiting *Moix*, this court has held that where the harm, particularly of alienation, is self-evident, it does not need to wait for proof of actual harm to befall the children by completion of the alienation process to protect them from it. *Boudreau*, *supra*; *Hanna v. Hanna*, 2010 Ark. App. 58, 377 S.W.3d 275.

The circuit judge unsuccessfully explored many alternatives by the time that he ruled on October 21, 2013. In light of appellant's continued refusal to control herself when communicating to the children despite numerous admonitions, orders, threats, and

8

punishments by the circuit court, we hold that this is an example of an extraordinary case where the circuit court's ruling severely curtailing visitation should be affirmed. *See Grove v. Grove*, 2011 Ark. App. 648, 386 S.W.3d 603 (upholding supervised visitation following alienation). The circuit judge had attempted to prevent the children's exposure to appellant's communication, but the multiple attempted potential punishment options imposed to prevent further such communication were unsuccessful. We hold that the record contains sufficient evidence to support the circuit court's decision to further limit appellant's visitation.

### III. *Attorney's Fees*

In the present case, the circuit court awarded $2500 attorney's fees to appellee based on the testimony of appellee as to the amount he incurred in the litigation. It is appellant's position that the proper procedure was not followed by the circuit court as governed by Arkansas Rule of Civil Procedure 54(e), in that appellee never filed a motion with the circuit court and never stated under which rule or statute he was entitled to attorney's fees. In addition, she argues that there was no opportunity for her to challenge the exact amount of attorney's fees requested or a chance to review the actual billing statements of appellee's attorney.

We do not reach the merits of appellant's argument on this issue because her arguments against the award of attorney's fees were never made below to the circuit court. Arkansas appellate courts have repeatedly stated that they will not consider arguments not made below, *see Sykes v. Williams*, 373 Ark. 236, 283 S.W.3d 209 (2008), and that one

9



cannot change the basis for an objection on appeal. *Boellner v. Clinical Study Ctrs., LLC,* 2011 Ark. 83, 378 S.W.3d 745.

Affirmed.

WOOD and BROWN, JJ., agree.

*Skarda Law Firm*, by: *Cecily Patterson Skarda*, for appellant.

*Jensen Young & Houston, PLLC*, by: *Perry Y. Young*, for appellee.