SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-621

| | |
|---|---|
| JESSE ODEAN MARTIN<br><br>APPELLANT<br><br>V.<br><br>JERI LIN MARTIN<br><br>APPELLEE | **Opinion Delivered** February 11, 2015<br><br>APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. 30DR-12-387-1]<br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Jesse Martin appeals from the January 21, 2014 divorce decree and findings of facts and conclusions of law entered by the Hot Spring County Circuit Court. Appellant argues that the circuit court erred in limiting his visitation with his daughter to "an average of 4.5 hours per week and in requiring that all visitation be supervised." We affirm.

Appellant and appellee Jeri Martin were married on August 7, 2010, and lived together as husband and wife until they separated on or about February 5, 2013. One child, W.M., was born during the marriage on April 4, 2012. Appellee filed for divorce on February 15, 2013.[1] Appellant answered appellee's complaints on March 6, 2013, seeking to have them

---

[1]This was appellee's second amended complaint for divorce. She first filed a complaint on November 26, 2012; however, the parties briefly reconciled.

dismissed. He filed a counterclaim for divorce on April 9, 2013.[2] A temporary order was entered on May 13, 2013,[3] awarding appellee temporary custody of W.M., and granting appellant a total of sixteen hours' supervised visitation with the child a month. Appellant was also ordered to undergo a full psycho/sexual examination. Appellant filed a motion for psychological evaluation and modification of visitation on June 22, 2013.

A hearing on the motion took place on July 30, 2013. At the hearing, appellant testified that his visitation with W.M. was always distracted by appellee and her family. He asked that supervision be eliminated and that he receive more time with W.M. According to appellant, not only had his access to W.M. been "cut off," but his family's access had been as well.

Arthur Wayne Chupik testified that he performed appellant's psycho-biosexual assessment. He stated that he interviewed appellant and most of his family members as part of the assessment. He also said that appellant was required to take a polygraph. Chupik testified that he reviewed text messages and Facebook pages, which he used in his assessment. Chupik opined that appellant would not be a danger to his child or any child. He stated that he saw no reason for appellant's visitation with his daughter to be restricted or supervised.

On cross-examination, Chupik stated that he did not speak to appellee about her concerns during the assessment of appellant. He said that he did not ask appellant about his comment to appellee that he wished to have sex with their daughter when she was older so

---

[2]He subsequently withdrew his counterclaim for divorce.

[3]This order reflected the temporary agreement between the parties.

that he could train her because he (Chupik) did not know anything about the comment. He stated that appellant's text message about sexual interactions with his siblings consisted of true events and "simply fantasy-like thinking." Chupik acknowledged that in Exhibit 5, appellant was talking about looking at his then-thirteen-to-fourteen-year-old half-sister's breast.[4] He further acknowledged that appellant reported that he was sexually attracted to fourteen-to-seventeen-year-old teenage girls and adult females. He testified that to him, a child for purposes of his report was six years old and younger. He also stated that appellant's attraction to adolescents was not an issue unless acted upon. Chupik stated that he would consider appellant's asking his half-sister to send him a photo of her breast acting upon an impulse; however, he stated that this was a one-time incident and did not show a pattern of behavior. He testified that appellant was acting on an impulse if appellant stated that he would have sex with his daughter when she is older and if he made a request to get a fifteen-year-old girl to his house so that he could get a photograph of her breasts; however, he stated that he did not have this information at the time of the assessment. He further stated that he did not bring the information he received from appellee to court with him because it "would have been too much to carry." Chupik concluded that appellant would have to "act upon it" (his impulses toward young females) before he changed his opinion as it relates to the safety of W.M.

Appellee testified that she received text messages asking her to "sext" appellant because she was no good at talking dirty during sex. She stated that she wanted supervised visitation to continue because she feared for W.M.'s safety. She said that while she was pregnant with

---

[4]She was seventeen at the time of the assessment.

W.M. appellant told her that his fantasy was to have sex with young kids. In regard to her fifteen-year-old niece, appellee stated:

> Mr. Martin told me that he has seen up her shorts, that she would sit on his lap and that he would become aroused, and that she had put her hand on him knowing what it was. He requested that I show pictures of himself to her. His private area, to her. He sent me the picture, and I denied to show it to her. He also requested that she come to the house and that he could walk out of the shower naked so that he could see the look on her face. I did not do that. That was the only time he's ever requested that I set something up like that.

She stated that appellant continued to have sexual relations with his brother and neighbor until appellant was twenty-one. She testified that in 2010, appellant tried to "set something up with the brother and the sister-in-law."

On cross-examination, appellee stated that she participated in "sexting" when appellant "badgered" her into it. However, she denied ever "sexting" anything about her and her father or her and her uncle. Appellee acknowledged that she sent appellant a picture of her aunt with a bra on. She admitted that when she was seven or eight, she and a girl from her neighborhood would rub and kiss on each other; however, she denied insertion or ejaculation. Appellee stated that appellant never bathed alone with W.M. before they separated, but that he would sometimes keep W.M. for two to three hours at a time without supervision.

Appellant testified that he was alone with W.M. during the first year of her life. He stated that appellee never said or did anything to indicate to him that she thought he was "a danger or weird." He said that appellee responded to his "sexts" throughout their marriage.

The court issued a letter opinion on August 2, 2013, denying appellant's motion. A temporary order was entered on August 21, 2013, stating in pertinent part:

The Court at this time does not change the supervised visitation rights of the Defendant. This finding is based upon several key factors that were presented in evidence to the Court. First of all, Plaintiff's Exhibit Nos. 4, 5, 6 and 7 are direct text messages by the Defendant, Jesse Odean Martin, to the Plaintiff, Jeri Lin Martin. The text messages were not all fantasy texts, but were text messages directly concerning the conduct and the inability of the Wife to satisfy her Husband and/ or discussions concerning conduct that the Defendant, Jesse Odean Martin, had during his own childhood and during his life involving other members of his family. The Court finds that the text messages are truly disturbing and [bizarre]. The Defendant's dirty text messaging about the Wife's inability to satisfy him shows he does have some strange sexual tendency. The statement of the Defendant Jesse Odean Martin, to the Plaintiff, Jeri Lin Martin, "he would when the child was old enough, train his daughter on sexual matters" shows he has a potential deviant sexual problem. Furthermore, Exhibit 8, is a [bizarre] text that could be treated as a fantasy, but also obviously was sent by the Defendant to not only entice the Plaintiff, Jeri Lin Martin, but to excite himself. The Court finds the Defendant, Jesse Odean Martin's actions to be at least [bizarre] and would not be in anyway in the best interests of the minor child. Furthermore, the Court rejects the psycho-bisexual assessment introduced by the Defendant, Jesse Odean Martin. The evaluation is suspect and the polygraph is not admissible as the polygraph examiner was not in court. The polygraph examiner's two questions of whether a person is telling the truth is not acceptable nor is it reliable. The report on the psycho-sexual assessment is unrealistic. The test results themselves show that the Defendant, Jesse Odean Martin, has an interest in 14–17 year old females and the Court finds no basis for lifting a restriction of visitation with the two year old child of the parties in this matter. The Court is not willing to accept that risk. Mr. Chupik, the psycho-sexual assessor believes that Mr. Martin would not be a danger to his two year old child when, in fact, his own findings show he is sexually interested in 14 to 17 year old children. The Court continues with it's (sic) previous finding that the Defendant should not have any unsupervised visitation with this child on a temporary basis. Outside public visits with supervision, as previously agreed by the parties is the temporary visitation order which is acceptable to this Court.

On September 12, 2013, appellant filed a motion for contempt, destruction of evidence, perpetrating fraud upon the court, and perjury. He filed a motion for a Rule 706 expert to perform an evaluation on October 10, 2013. The court took evidence regarding these motions at the final divorce hearing held on November 22, 2013, and subsequently denied the motions.

SLIP OPINION

At the final hearing, appellee reiterated her desire for appellant's visitations to continue to be supervised. She stated the she did not believe that anyone in appellant's family would be appropriate supervisors. She said that appellant changes W.M.'s diaper at least three times in an hour during visitation and that he attempts to be alone with W.M., which makes appellee uncomfortable. Appellee testified that she should not be responsible for the texts she sent to appellant because he should have access to them on his phone. She further stated that both appellant and his counsel indicated they had the text messages.

On cross-examination, appellee stated that she deleted text messages that she did not think were relevant. However, she stated that appellant should have had her responses to his messages in his phone. Appellee testified that appellant received a total of sixteen hours' supervised visitation with W.M. a month. She admitted that visitation during this time was very tense for everyone involved, including W.M. Appellee stated that it was in the best interest of W.M. to only have sixteen hours of visitation a month.

Scott Brown, appellee's stepfather, testified that he witnessed appellant's grandfather making inappropriate comments about W.M.'s butt. He stated that he has also overheard the grandfather making comments about another grandchild's "boobs."

Larry Freet, Sr., appellant's grandfather, stated that he did not have any problem controlling appellant, and that if he was ordered to supervise visitation between appellant and W.M., he would follow the court's order.

Josie Freet, appellant's grandmother, testified that visitation with appellee and her family supervising was very distracting. She stated that her contact with W.M. is very limited.

She said that she believed that she and her husband were capable of supervising visitation between appellant and W.M.

On cross-examination, Josie stated that she saw no reason for appellant to have supervised visitation with W.M. However, she admitted that she had not seen the text messages sent to appellee by appellant.

Appellant testified that visitation at appellee's house was very stressful. He asked the court to allow him visitation at his grandparents' house. He stated that he was fine with his grandparents supervising the visits if the court deemed it necessary. Appellant acknowledged that it would probably take counseling before everyone is comfortable with him being around W.M. He stated that he was willing to do whatever the court ordered. He testified that he did not want to have visitation around appellee's family because they do not get along. He also said that he wanted more time with W.M.

On cross-examination, appellant stated that appellee was just as guilty of sending text messages as he was. He said that he no longer had the phones in which he received the messages. However, he stated that he would delete the messages the following day because he did not want to lose his phone and have someone going through it. Appellant stated that he was not "obsessed with incest." He also stated that he did not think that the things he had done as a young adult needed attention by a counselor.

On redirect, appellant stated that he would accept counseling in order to be able to see W.M. if the court felt that it was necessary.

At the conclusion of the hearing, the court granted appellee an absolute divorce from appellant. The court awarded appellee custody of W.M., and kept the temporary visitation schedule in effect. However, visitation was to be supervised by a DHS-approved supervisor with "sight and sound" view during visitation. The court told appellant that, if he had a certified supervisor in place in time, he would be granted extended visitation from December 26 to December 30.

The court entered the divorce decree and findings of fact and conclusions of law on January 21, 2014. In the order, the court reiterated its findings concerning visitation that were contained in the temporary order. The court also stated that it received Chupik's report into evidence and afforded it the proper weight; however, it stated that it did not find the report credible and did not take Chupik's recommendations. Appellant filed a timely notice of appeal on February 19, 2014. This appeal followed.

Appellant contends that the trial court erred in granting him an average of 4.5 hours of weekly supervised visitation with his daughter. More specifically, he argues that the text messages mentioned by the court were not sufficient to support the court's decision to curtail his visitation with W.M. He also argues that the unrebutted report from Chupik weighs in favor of unlimited and unrestricted visitation.

We review domestic-relations cases de novo on the record, but will not reverse a trial court's findings of fact unless they are clearly erroneous.[5] A finding of fact by a circuit court is clearly erroneous when, despite supporting evidence in the record, the appellate court

---

[5]*Robinson v. Ford-Robinson*, 362 Ark. 232, 208 S.W.3d 140 (2005).

viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed.[6] We give due deference to the superior position of the circuit court to view and judge the credibility of the witnesses.[7] This deference to the circuit court is even greater in cases involving child custody or visitation, as a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children.[8]

Appellant cites *Phillips v. Phillips*,[9] *Sharp v. Keeler*,[10] *Williams v. Ramsey*,[11] and *Boudreau v. Pierce*,[12] to support his position that the text messages, which he categorizes as (1) messages relating to sexual experimentation as a child, (2) messages relating to sexual dissatisfaction, (3) messages relating to concerns regarding private information being shared in court, and (4) messages regarding a sexual fantasy, did not make this an "extraordinary case" to justify a curtailment of his visitation. The cases cited by appellant are distinguishable in that they all dealt with custody modification and visitation or modification to an existing visitation order. Here, unlike in the cases cited by appellant, we are dealing with an initial custody and visitation award, not a modification of the award. With regard to custody and visitation, the

---

[6] *Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823.

[7] *Hunt v. Perry*, 357 Ark. 224, 162 S.W.3d 891 (2004).

[8] *Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005).

[9] 2014 Ark. App. 486, 442 S.W.3d 901.

[10] 99 Ark. App. 42, 256 S.W.3d 528 (2007).

[11] 101 Ark. App. 61, 270 S.W.3d 345 (2007).

[12] 2011 Ark. App. 457, 384 S.W.3d 664.

primary consideration is the welfare and best interest of the children involved; all other considerations are secondary.[13] The court found that based on the messages sent by appellant, as well as statements made by him to appellee, it was in W.M.'s best interest that appellant be granted sixteen hours of supervised visitation with her a month. In light of the facts of this case, we cannot say that the court was clearly erroneous. Accordingly, we affirm the visitation award.

However, even if we were to accept appellant's contention that the visitation he was awarded was a curtailment of his visitation, requiring this case to be extraordinary in order to support the visitation awarded, we would still affirm because the facts of this case are anything but ordinary. The court was in the best position to judge the witnesses, the evidence presented, and the best interest of W.M. We are not left with a definite and firm conviction that a mistake has been made.

Appellant argues that the report of Chupik weighs in favor of him receiving unlimited and unrestricted visitation. If testimony or documentary proof shows a questionable basis for an expert's opinion, then the issue becomes a credibility call that the fact-finder must make.[14] Here, Chupik indicated that he did not have all of the information or evidence when he performed the assessment on appellant and subsequently wrote the report. He also failed to bring everything he relied on to court with him. The court did not agree with Chupik's recommendation that appellant should have unsupervised visitation with W.M., in light of

---

[13] *Baber v. Baber*, 2011 Ark. 40, 378 S.W.3d 699; *Hicks v. Cook*, 103 Ark. App. 207, 288 S.W.3d 244 (2008).

[14] *See Winn v. Winn Enters., Ltd. P'ship*, 100 Ark. App. 134, 265 S.W.3d 125 (2007).

SLIP OPINION

testimony that appellant had acted on his impulses for young females. The court admitted Chupik's report into evidence, but found that it lacked credibility. Thus, we find no error in the court's decision not to follow Chupik's recommendations. Additionally, there was sufficient evidence to support the court's finding that visitation between appellant and W.M. should be supervised at all times. Therefore, we affirm.

Affirmed.

KINARD and GRUBER, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.

*Sherry Burnett*; and *Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellee.