
# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-13-561

| | |
|---|---|
| CARMEN J. ALBARRAN<br>APPELLANT | **Opinion Delivered** December 11, 2013 |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. CV-12-1269] |
| LIBERTY HEALTHCARE MANAGEMENT | HONORABLE JOHN R. SCOTT, JUDGE |
| APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

The appellant, Carmen Albarran, appeals the order of the Benton County Circuit Court finding him in contempt. We affirm.

This appeal is related to our recent decision in *Albarran v. Liberty Healthcare Mgmt.*, 2013 Ark. App. 598 (docketed in this court as CV-13-90). Albarran was involved in a car accident and sought treatment for his injuries from Dr. Rick Looper at the Accident and Injury Treatment Center, which was a "d/b/a" for the appellee, Liberty Healthcare Management. Dr. Looper submitted a $3,710 bill to Albarran's health insurer, which paid $637.43 toward Dr. Looper's bill. Albarran eventually settled his motor-vehicle-accident claims with the tortfeasor's liability insurer for $30,000. The insurer, however, wrote two

separate checks: one to Albarran for $26,290, and the other one to Albarran and the Accident and Injury Treatment Center for $3,710, based upon a lien allegedly claimed by Liberty.

Albarran filed a petition for declaratory judgment against his health-insurance carrier and Liberty, seeking to have Liberty's alleged lien declared invalid. Albarran subsequently settled and dismissed his claim with his health-insurance carrier. Liberty filed a motion to dismiss the petition, denying that it had any ownership or authority over the "d/b/a" of "Accident and Injury Treatment Center" and disclaiming any interest in the proceeds of Albarran's settlement. The circuit court entered an order on October 11, 2012, granting Liberty's motion to dismiss and awarding attorney's fees of $4,410 to Liberty, to be paid within thirty days. Albarran filed a notice of appeal from that order.

Because the order did not dispose of all outstanding claims by all parties, the court subsequently certified the case as proper for appeal pursuant to Arkansas Rule of Civil Procedure 54(b). Albarran, however, never filed a notice of appeal from the later order, and this court dismissed his appeal for failing to file a timely notice of appeal from a final, appealable order. *Albarran*, 2013 Ark. App. 598, at 4–5.

Albarran did not pay Liberty's attorney's fees within the thirty days provided by the circuit court's order. He did, however, file a motion in circuit court to stay collection of the award of attorney's fees pending his initial appeal, but he did not post a supersedeas bond. He argued that he could not pay the fee out of the proceeds of his tort settlement because, given the current lawsuit, he was unable to liquidate the settlement at that time. The circuit

court denied the motion.[1] Liberty attempted to informally collect its fee. When no payment was received, it filed a motion for contempt. Three days after the circuit court set the matter for a hearing, Albarran filed a response to Liberty's motion in which he asserted that he had filed his appellate transcript in CV–13–90, thus depriving the circuit court of jurisdiction to act.[2]

The circuit court held a hearing on Liberty's motion in early March 2013. The court found that Albarran was in willful and malicious violation of the court's order due to his failure to comply with the order directing him to pay attorney's fees. In doing so, the court noted that there had been no testimony or evidence at the hearing demonstrating Albarran's inability to comply with the court's order. The court orally granted Liberty a body attachment for the Benton County Sheriff to take Albarran into custody to bring him before the court to see if there was any reason for his failure to comply with the court's order, if he did not comply on or before April 4, 2013. The court also awarded Liberty an additional $350 in attorney's fees for having to appear at the hearing. Albarran filed a timely notice of appeal following the entry of the circuit court's written order.

The standard of review in contempt cases depends on the kind of contempt that is at issue. Contempt is divided into criminal contempt and civil contempt. *Ivy v. Keith*, 351 Ark.

---

[1]Albarran also filed a motion in this court to stay the circuit court's order during the pendency of CV–13–90 but, again, did not post a supersedeas bond; that motion was denied as well.

[2]Albarran lodged the record with this court on January 25, 2012, nine days after Liberty filed its motion for contempt.

269, 279, 92 S.W.3d 671, 677 (2002). Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Johnson v. Johnson*, 343 Ark. 186, 197, 33 S.W.3d 492, 499 (2000). Civil contempt, on the other hand, protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* Because civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order. *See Fitzhugh v. State*, 296 Ark. 137, 139, 752 S.W.2d 275, 276 (1988). This is the source of the familiar saying that civil contemnors "carry the keys of their prison in their own pockets." *Id.* at 140, 752 S.W.2d at 277 (quoting *Penfield Co. v. S.E.C.*, 330 U.S. 585, 593 (1947)). Here, the parties agree that the contempt citation imposed by the circuit court was civil in nature, because Albarran had the ability to avoid the court's sanctions by paying Liberty's attorney's fees.

Our standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Ingle v. Ingle*, 2013 Ark. App. 660; *Applegate v. Applegate*, 101 Ark. App. 289, 275 S.W.3d 682 (2008). In our review, we defer to the superior position of the circuit judge to determine the credibility of witnesses and the weight to be given their testimony. *Russell v. Russell*, 2013 Ark. 372, ___ S.W.3d ___.

In order to establish civil contempt, there must be willful disobedience of a valid order of a court. *Ingle, supra.* However, before one can be held in contempt for violating the court's order, the order must be definite in its terms and clear as to what duties it imposes. *Id.* Here, the circuit court's order that Albarran was found in contempt for violating was definite in its

4

terms and clear as to what duties it imposed. Albarran was ordered to pay Liberty's attorney's fees of $4,410 within thirty days of the date of the order. Likewise, there is no question of Albarran's noncompliance with the order: he was ordered to pay within thirty days, and he concedes a failure to do so despite knowing that such failure could constitute contemptuous behavior.

Noncompliance with a court's order is not in and of itself contemptuous. The noncompliance must constitute willful disobedience for a finding of contempt. Albarran argues that he did not willfully disobey the court's order because he did not have the ability to comply. A court's power to institute civil contempt in order to acquire compliance with its orders is a long-standing rule of law, but it may not be exercised where the alleged contemnor is without the ability to comply. *Ingle*, *supra* (citing *Aswell v. Aswell*, 88 Ark. App. 115, 195 S.W.3d 365 (2004)). The court is empowered to punish the defendant by imprisonment for willful obstinacy where it shall appear that he had the means with which to comply with the decree, but it should not imprison him where he shows that he has not the pecuniary ability to comply with the decree and is in such ill health that he cannot earn enough money to do so. *Id.* (citing *Griffith v. Griffith*, 225 Ark. 487, 283 S.W.2d 340 (1955)).

Albarran acknowledges that, as a civil contemnor, he theoretically holds the keys to his own prison. He argues, however, that "reality makes it clear there are no keys available" to him because he does not have the ability to pay the judgment in a lump sum to free himself of the contempt. He therefore maintains that the court's imposition of contempt sanctions on him "will . . . be a sentence to debtor's prison."

5

Our supreme court has rejected the "debtor's prison" argument. In *Harrison v. Harrison*, 239 Ark. 756, 394 S.W.2d 128 (1965), the court wrote as follows:

> It is first contended on behalf of the petitioner that imprisonment for debt in a civil action is the effect of the order of commitment, and that this is forbidden by the Constitution. Article 2, § 16, Const. 1874.
>
> There are some courts which hold, in view of constitutional provisions forbidding imprisonment for debt, that disobedience of an order for payment of money under a judgment or decree cannot be punished as a contempt; but, according to the decided weight of authority, an order directing the payment of specific funds adjudged to be in the possession or control of the person at the time of the trial may be enforced by contempt proceeding, and punishment may be inflicted for disobedience of the order. [Citations omitted.]
>
> In one of the cases cited above the Supreme Court of Minnesota said: "In the case at bar the imprisonment is for the contempt in refusing to obey an order of the court. It is true that the order relates to the debt evidenced by the judgment against the estate; but this in no way alters the fact that the imprisonment is for the contempt, not for the debt. And the contempt does not consist in the relator's neglect or refusal to pay the debt, but in his disobedience of the order directing him to hand over certain property to the receiver. The fact that the property in question is to be handed over for the purpose of being applied to the payment of the judgment is in no way important. The commitment is, nevertheless, in no proper sense imprisonment for debt."

*Harrison*, 239 Ark. at 759, 394 S.W.2d at 130 (quoting *Meek v. State*, 80 Ark. 579, 98 S.W. 378 (1906)).

To the extent that Albarran argues that a circuit court may not use imprisonment as a punishment for civil contempt where the contemnor has failed to pay the other party's attorney's fees, he cites no authority in support of his position. To the contrary, caselaw indicates that imprisonment may be an appropriate sanction in such circumstances. *See, e.g.*, *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007) (noting, without criticism, circuit court's order that, if appellant failed to abide by the conditions imposed by the court, which

included payment of attorney's fees by a given date, he would be incarcerated for an additional fourteen days); *Williams v. Ramsay*, 101 Ark. App. 61, 270 S.W.3d 345 (2007) (ten-day period of incarceration fell within the category of civil contempt because it was designed to coerce appellant to pay attorney's fees that he had been previously ordered to pay).

We therefore find no merit to Albarran's argument. This court has noted that judicial sanctions in civil-contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. *Pinnacle Point Props., LLC v. Metropolitan Nat'l Bank*, 2012 Ark. App. 268 (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). It has long been the rule in Arkansas that, in certain cases, a process for contempt may be used to effect civil remedies, the result of which is to make the innocent party whole from the consequences of contemptuous conduct. *Id.* (citing *Omni Holding & Dev. Corp.* v. *3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004); *Walker v. Fuller*, 29 Ark. 448, 469 (1874); *Butler v. Comer*, 57 Ark. App. 117, 942 S.W.2d 278 (1997)). Here, the court noted that there had been no testimony or evidence at the hearing demonstrating Albarran's inability to comply with the court's order, and the court found him in contempt but gave him another thirty days to comply; failing that, Albarran was to be brought to court to explain his inability to pay before he would be jailed.[3] Albarran has consistently refused to

---

[3]We acknowledge Albarran's citation to *Chetram v. Singh*, 937 So. 2d 716 (Fla. App. 2006), for the proposition that, where jail is the sanction for civil contempt, the court must grant the contemnor an opportunity to establish inability to pay before he can be incarcerated.

pay the attorney's fees that the court ordered him to pay. The circuit court properly utilized the process available to it to coerce Albarran's compliance. We therefore find no error in the circuit court's decision.

As a final point, Albarran also argues that the circuit court lacked jurisdiction to impose contempt sanctions in March 2013 because he lodged his record on appeal in CV-13-90 with this court in January 2013. *See, e.g.*, *Maxwell v. State*, 2012 Ark. 251 (the filing of the transcript in an appellate court deprives a trial court of jurisdiction). The supreme court, however, has noted that even though the record may have been lodged with the appellate court, where no supersedeas bond has been filed, the trial court retains jurisdiction to enforce its orders. *See Kearney v. Butt*, 224 Ark. 94, 271 S.W.2d 771 (1954); *East v. East*, 148 Ark. 143, 229 S.W. 5 (1921). Because Albarran failed to post a supersedeas bond (and all of his motions for stay pending appeal were denied, both by the circuit court and this court), his argument lacks merit.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Bradley Mullins*, for appellant.

*Karey W. Gardner*, for appellee.

---

That, however, is precisely what the circuit court's order here did. In the event that Albarran did not pay the attorney's fees within thirty days, he was to be brought to court to put on proof of his inability to pay—proof that Albarran failed to introduce at the contempt hearing.