Cite as 2023 Ark. App. 251

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-21-558

KRYSTAL SAUL

APPELLANT

V.

JEREMY SAUL

APPELLEE

Opinion Delivered May 3, 2023

APPEAL FROM THE POPE COUNTY
CIRCUIT COURT
[NO. 58DR-19-281]

HONORABLE GORDON W. "MACK"
MCCAIN, JR., JUDGE

AFFIRMED

## N. MARK KLAPPENBACH, Judge

This is an appeal from a 2021 divorce decree that granted a divorce to appellee Jeremy

Saul, divided marital property, awarded appellant Krystal Saul alimony for eighteen months,

gave legal and physical custody of the parties' three-year-old daughter to Jeremy, gave Krystal

visitation rights, and awarded Jeremy attorney's fees and costs against Krystal for her

contemptuous behavior.  Krystal contends that the circuit court clearly erred (1) by not

awarding the parties joint custody; (2) by not "piercing the corporate veil" of Jeremy's two

premarital businesses; and (3) by holding her in contempt and awarding Jeremy attorney's

fees and costs against her.  We affirm.

Krystal initiated this litigation in 2019. Krystal had been diagnosed with an

autoimmune disorder and had been awarded Social Security disability benefits; she did not

work outside the home.  The parties have one daughter who was born in 2017, the only child

of this marriage; each party has a son from previous marriages. The parties' daughter has some health issues, some eating issues, and some food and skin allergies.

Following a temporary hearing, the circuit court ordered that the parties share joint custody of their daughter with alternating weeks of visitation; that the parties comply with bi-weekly weigh-ins of the child at her pediatrician's office; that Jeremy (a family physician) pay $1,673 in monthly child support; that Jeremy pay the parties' monthly mortgage on their home in Russellville, health insurance, and credit-card payments; that Krystal and their daughter could remain in the marital home; and that Krystal serve as the primary legal custodian for medical decisions for the child. Over the next year, both parties filed a variety of motions, including motions to compel discovery, for contempt, and for emergency ex parte relief. In June 2020, the circuit court appointed Jeannie Denniston as attorney ad litem for the child. Denniston requested psychological evaluations of the parties, and Dr. Glen Adams was appointed to perform those evaluations.

The multi-day trial was conducted in February and March 2021. Ms. Denniston provided written recommendations to the circuit court, concluding that Jeremy should be awarded legal custody but that the parties should have joint physical custody. Each party testified about the negative qualities of the other parent. Jeremy wanted full custody, and Krystal wanted to continue joint custody. By Krystal's own estimation, her daily life activities were limited by her physical ailments: debilitating headaches; loose joints that often caused discomfort and muscle spasms; nerve pain in her hands and feet; gastrointestinal distress; and dizziness.

Dr. Adams opined that Krystal's actions showed a chronic, entrenched pattern of beliefs and accusations that were at times malevolent and directed toward Jeremy. Dr. Adams opined that Krystal's prognosis for substantive change is poor because of the very limited insight she displayed during the interview and the chronic and severe features of the pattern. He said that Krystal likely has a combination of legitimate psychological and physiological concerns with some that were feigned, and it was hard to find the line between truth and reality. Dr. Adams diagnosed Krystal as having unspecified personality disorder with borderline and histrionic traits.

Dr. James Carter, M.D., testified that if Krystal's reported physical conditions were true, those conditions would significantly impair her basic activities of daily living and would result in death in approximately ten years. Krystal's alleged physical concerns include, but are not limited to, carnitine deficiency disorder, chronic neutropenia, immune system dysfunction, ADHD, auto-immune encephalitis, polyneuropathy, undifferentiated connective tissue disease, primary osteoarthritis involving multiple joints, fibromyalgia, gastroparesis, PTSD, generalized anxiety disorder, cataracts, MGUS, dysautonomia, and Meniere's disease.

At the end of March 2021, the circuit court entered a final divorce decree in which it awarded custody to Jeremy. The court stated it had observed the demeanor of the witnesses and had placed the burden of proof on the party opposed to joint custody, in this case, Jeremy. Ultimately, the circuit court found Krystal proved "to be one of the most untruthful individuals I have had in my Court." The circuit court found the trial replete with Krystal's

3

statements that were "clearly untrue to the degree that this Court has reason to be concerned about the Plaintiff's ability to overcome her tendency to embellish, obfuscate and blatantly lie." The circuit court took the attorney ad litem's recommendation into consideration but ultimately determined Jeremy was the parent who should have legal *and physical* custody of the child. The circuit court noted that Krystal's "disturbing lack of control regarding truthfulness" was on full display, including her meritless accusations against Jeremy that her disability was his fault to a certain extent and that he maliciously intended to harm her medically; her lies about having completed bachelor's degrees in psychology and art history and near completion of a master's degree in social work when the facts showed she does not have a college degree and has never attended graduate school; and her odd claim that "after a sexual assault years before marrying Jeremy, she lost the ability to play the piano or to speak three other languages."

The circuit court awarded alternating weekend and holiday visitation to Krystal. The circuit court deviated from the child-support chart and found that no child support should be awarded to either party but did order Jeremy to pay $1,000 in monthly spousal support to Krystal for eighteen months, and it ordered him to pay for all medical costs and extracurricular costs for their daughter. The circuit court found both of Jeremy's premarital businesses in dispute (Apollo Investments, Inc. and Sparta Corp., Inc.) to be his property and not subject to division, except for certain personal and real property acquired during the marriage in the name of Sparta Corp., Inc., which the circuit court divided equally between

the parties. Krystal retained her premarital home in Benton, Arkansas. The marital home in Russellville was to be listed for sale and the proceeds divided evenly.[1]

The circuit court held Krystal in contempt of court for four separate alleged violations: (1) for revoking a HIPAA authorization allowing Jeremy to receive her medical records; (2) for failing to acknowledge receipt of certain child-support payments from Jeremy;[2] (3) for allegedly causing extremely disparaging information about Jeremy to be posted on a social media account; and (4) for refusing to execute the parties' 2018 and 2019 income tax filings. Jeremy subsequently filed a motion for attorney's fees and court costs for her contemptuous behavior, and the motion was granted.

Krystal now appeals from the circuit court's divorce decree and the circuit court's order that she pay approximately $5,300 in attorney's fees and court costs to Jeremy for her contemptuous behavior. We hold that Krystal has not demonstrated reversible error.

Krystal first argues that the circuit court erred by not ordering that the parties have joint custody of their daughter. She contends that the circuit court failed to make a "best interest" finding, that the court wrongly used its finding that she was not credible to punish her with the custody ruling, and that the court was wrong to find that the parents could not effectively coparent. We disagree.

---

[1]Jeremy had moved to an apartment in London, Arkansas.

[2]The circuit court held both Krystal and Jeremy in contempt of court on this issue. It ordered both to serve seven days in the Pope County Detention Center, suspended on the condition that neither violated the court's order again.

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Li v. Ding*, 2017 Ark. App. 244, 519 S.W.3d 738. We consider the evidence de novo but will not reverse unless the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Faulkner v. Faulkner*, 2013 Ark. App. 277; *Delgado v. Delgado*, 2012 Ark. App. 100, 389 S.W.3d 52. Findings are clearly against the preponderance of the evidence when the court is left with an irrefutable and express belief that a mistake has occurred. *Faulkner, supra.* Importantly, this court gives deference to the superior position of the circuit court to view and judge the credibility of the witnesses in these matters. *Id.* Deference to the circuit court is even greater in cases involving child custody because a heavier burden is placed on the circuit court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. *Delgado, supra.* Child-custody cases are unique because there are no other cases in which the superior position of the circuit court to assess witness credibility carries as much weight.

Contrary to her arguments that the court did not make a finding on this child's best interest, the court specifically found that it was in this child's best interest child that Jeremy be awarded legal and physical custody. The court considered our state's custody statute and its policy that an award of joint custody is "favored." Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Supp. 2021). The burden, then, was Jeremy's to demonstrate why joint custody was not in their daughter's best interest. We are not persuaded that the custody decision was made solely to punish Krystal for her untruthfulness. Krystal's untruthfulness and personality

6

disorder included a degree of maliciousness that could not be in her daughter's best interest. This case did not display mere gamesmanship or petty disagreements that can exist in a joint-custody arrangement. *See Hart v. Hart*, 2013 Ark. App. 714 (making derogatory comments in front of the children and failing to pay insurance premiums). Krystal herself asserts that she is seriously handicapped by physical ailments, which must factor into whether joint custody would be appropriate in this case. The evidence here showed that Krystal has substantial mental issues, and her malevolent actions toward Jeremy show that long-term coparenting was unlikely to be successful. *See Smith v. Hembree*, 2022 Ark. App. 121 (affirming an award of sole custody based in part on appellant's psychological evaluation and in part on her demonstrated inability to coparent effectively). We are mindful, though, that each determination rests on its own facts. *Hoover v. Hoover*, 2016 Ark. App. 322, 498 S.W.3d 297. Giving the due deference we owe to the circuit court, particularly in matters of child custody, we hold that Krystal has not demonstrated clear error in the circuit court's custody finding.

Krystal next argues that the circuit court clearly erred by not piercing the corporate veil of Jeremy's two premarital businesses, Apollo Investments, LLC, and Sparta Corp, Inc. Apollo was formed by Jeremy to purchase and manage rental and commercial properties with substantial mortgages tied to those properties. Jeremy hired a property manager to manage those properties and collect rent to pay toward mortgages and expenses. Sparta is an entity that Jeremy uses to "rent" his medical services to emergency rooms and for disability consultations. Sparta's primary assets are a 2015 Chevrolet Suburban valued at $24,500

titled in Sparta's name, which was ultimately awarded to Krystal, and a 1.74-acre parcel that had equity equivalent to the Suburban, which was awarded to Jeremy.

Krystal has not shown that the circuit court clearly erred. While Jeremy took some insignificant amounts of money from Apollo, all the funds were used to support the family and were ultimately repaid to Apollo at the end of the year. In special circumstances, the court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party. *Enviroclean, Inc. v. Ark. Pollution Control & Ecology Comm'n*, 314 Ark. 98, 858 S.W.2d 116 (1993). There simply was no evidence to prove that the corporate form was illegally abused here, and the companies are undeniably premarital.

Moreover, the circuit court effectively evenly divided the assets held by Sparta, despite this corporation being a premarital asset. Jeremy did use some of Sparta's income for private purposes during the marriage, such as their home's pool expenses, credit cards, student loans, vehicle payments, and childcare; however, other expenses were for business purposes such as overnight hotel and RV expenses. The money used for private purposes was repaid to Sparta at the end of the year per their accountant's instructions, just as was done with Apollo. The issue of whether the corporate entity has been fraudulently abused is a question for the trier of fact, and the one seeking to pierce the corporate veil and disregard the corporate entity has the burden of proving that the corporate form was abused to his injury. *See Nat'l Bank of Commerce v. HCA Health Servs. of Midwest, Inc.*, 304 Ark. 55, 800 S.W.2d 694 (1990). After our de novo review of the evidence, we cannot say that the circuit court's findings regarding Jeremy's premarital businesses were clearly erroneous.

8

In Krystal's next argument, she focuses on the fact that she was cited for civil contempt and not criminal contempt. Krystal makes a detailed argument regarding the difference between civil and criminal contempt. She also argues that she was never given the opportunity to purge herself of contempt, so the contempt orders were invalid.

Krystal does not acknowledge that to enforce their orders and regulate the conduct of trials, judges have a statutory and an inherent power to punish as contempt conduct that tends to impede, embarrass, or obstruct the court in administering justice or that tends to bring the administration of law into disrespect or disregard. Ark. Code Ann. § 16-10-108 (Repl. 2010); *Burradell v. State*, 326 Ark. 182, 185, 931 S.W.2d 100, 102 (1996); *Albarran v. Liberty Healthcare Mgmt.*, 2013 Ark. App. 738, 431 S.W.3d 310. Judicial sanctions in civil-contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order and to compensate the complainant for losses sustained. *Albarran, supra*. In certain cases, a process for contempt may be used to effect civil remedies, the result of which is to make the innocent party whole from the consequences of contemptuous conduct. *Id*. We hold that under the facts and circumstances of this case, the circuit court did not abuse its discretion by granting Jeremy's petition for attorney's fees and costs.

Krystal adds that the circuit court erred by permitting the attorneys to testify about their understanding about the existence or nonexistence of Jeremy's opportunity to work at the Veterans Administration clinic in Russellville. Krystal testified at trial that she knew nothing about it, but pretrial settlement discussions among the attorneys and parties

demonstrated otherwise. Her false testimony placed each parties' counsel, including Krystal's own attorney and the ad litem, in the position of suborning possible perjury in violation of Arkansas Rule of Professional Conduct 3.3(a)(3). *Diamante v. Dye*, 2013 Ark. 501, 430 S.W.3d 710.

Krystal has not demonstrated reversible error. First, after the attorneys discussed this issue at length, Krystal's counsel did not move to disqualify Jeremy's lawyer from the case or obtain a ruling on any such motion. Therefore, the issue is not preserved. *Ark. State Bd. of Election Comm'rs v. Pulaski Cnty. Election Comm'n*, 2014 Ark. 236, 437 S.W.3d 80. Second, a party cannot complain of an action in which the party acquiesced. *Childers v. Payne*, 369 Ark. 201, 252 S.W.3d 129 (2007). Once Krystal's attorney testified, she acquiesced in the court's decision to allow the attorneys to present testimony. We conclude that this alleged error was not preserved for appeal, and even if preserved, her argument holds no merit.

Affirmed.

BARRETT and BROWN, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor*, *Jennifer Williams Flinn*, and *Tasha C. Taylor*, for appellant.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; and *Peel Law Firm, P.A.*, by: *John R. Peel*, for appellee.