Cite as 2026 Ark. App. 225

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-24-685

| | |
|---|---|
| GERALD ROBINSON, IN HIS OFFICIAL CAPACITY AS COUNTY JUDGE OF JEFFERSON COUNTY, ARKANSAS<br><br>APPELLANT<br><br><br>V.<br><br><br>LAFAYETTE WOODS, JR., IN HIS OFFICIAL CAPACITY AS SHERIFF OF JEFFERSON COUNTY, ARKANSAS<br>APPELLEE | Opinion Delivered April 8, 2026<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CV-22-199]<br><br><br>HONORABLE GARY ARNOLD, JUDGE<br><br><br><br>AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Gerald Robinson, the county judge of Jefferson County (Judge Robinson), appeals from the Jefferson County Circuit Court's order holding him in contempt for arbitrarily and capriciously denying claims for payment submitted to him by Jefferson County Sheriff Lafayette Woods, Jr. (Sheriff Woods). On appeal, Judge Robinson argues that the order he was found to have violated was not sufficiently clear to form the basis of a contempt finding, and even if it was sufficiently clear, his denials of Sheriff Woods's claims were not arbitrary and capricious. We affirm.

I. *Procedural History*

This case began in March 2022 when Sheriff Woods filed a petition against Judge Robinson and all the Jefferson County justices of the peace. Sheriff Woods sought a declaration that Ordinance 2022-136, which set the 2022 budget for Jefferson County, was invalid and asked the court for a writ of mandamus compelling the Jefferson County Quorum Court to appropriate additional funds to the Jefferson County Sheriff's Department. Sheriff Woods filed a first amended petition in May seeking the same relief, and a second amended petition in August seeking the same relief plus a declaration that Ordinance 2021-27, which adopted a job requisition/pre-offer form for use by county officials, was invalid because the ordinance was not properly enacted and was unconstitutional because it required the county judge's signature. On January 26, 2023, Sheriff Woods filed a third amended complaint to supplement his earlier petitions, adding the claims relevant to this appeal in which he alleged that Judge Robinson had arbitrarily and capriciously denied his requests for payment.

On February 6, the circuit court granted a motion to dismiss filed by Judge Robinson and the justices of the peace as to all claims in the original petition and the first amended petition. On September 14, the court held a hearing on the remaining claims. At the outset of the hearing, the court granted Sheriff Woods's motion for partial summary judgment as to Ordinance 2021-27, finding that it was not properly enacted and was, therefore, invalid for failure to comply with the requisite rules; the court entered an order on November 29 reflecting this decision. The only remaining issues were those regarding Judge Robinson's

2

denial of Sheriff Woods's payment requests, and the court heard testimony and received evidence on these issues.

Also on November 29, the circuit court entered findings of fact and conclusions of law (the November order) recognizing that the county quorum court is required by law to prepare a yearly budget and that the county judge has the power to "authorize and approve disbursement of appropriated county funds." Ark. Const. Amend. 55 § 3. By statute, the county judge must review all claims for payment to ensure that they comply with the purpose for which the funds were appropriated. Ark. Code Ann. § 14-14-1102 (Repl. 2013). The court then entered the following:

## FINDINGS OF FACT

15. The county budget approved by the Jefferson County Quorum Court provides line items for different types of expenses. By detailing the budget in this way, the Quorum Court indicates the purpose for which the funds are appropriated. Stated another way, the line item in the budget dictates the purpose for which county funds were appropriated by the Quorum Court.

16. Since June 13, 2022, the office of the County Judge has denied or disallowed 93 claims submitted for payment by the Sheriff's Department, as indicated in the demonstrative exhibit introduced as Petitioner's Exhibit 2.

17. Of the more than 2,000 claims submitted by the Sheriff's Department since June 13, 2022, a total of 93 were denied or disallowed, equating to approximately six denied or disallowed claims per month.

18. There is no legal requirement that a county judge explain the reason for the denial of a claim. *See* Attorney General Opinion No. 2020-059.

19. The testimony established that some of the denied claims were subsequently resubmitted, and approved for payment, but it was unclear from the testimony how many of the 93 denied claims were subsequently paid and how many remain outstanding.

20. The testimony also established that some of the invoices that comprised the denied claims were resubmitted without change as part of new claims with different claim numbers.

21. The basis for denial of some claims was not always consistent. Further, some claims initially denied were subsequently resubmitted without substantive change and then allowed.

22. No other department in Jefferson County government was subject to similar inconsistent denial of submitted claims.

## CONCLUSIONS OF LAW

23. "[M]andamus is an appropriate remedy when a public officer is called upon to do a plain and specific duty, which is required by law and which requires no exercise of discretion or official judgment." *Clowers v. Lassiter*, 363 Ark. 241, 244, 213 S.W.3d 6, 9 (2005).

24. "Mandamus does not lie to control a public official's discretionary act." *Martz v. Felts*, 2019 Ark 297, at 3, 585 S.W.3d 675, 677.

25. The County Judge's review of claims and his decision as to whether to approve or deny those claims are discretionary acts. In performing his statutory duties to ensure that county funds are expended in accordance with the budget promulgated by the Quorum Court, the County Judge is called upon to exercise his discretion and his official judgment. As such, mandamus does not lie, and Petitioner's claim for a writ of mandamus is denied.

26. At the conclusion of the trial, Petitioner asked this Court to limit the County Judge's review of claims going forward to deny only those where there is evidence of fraud or an issue with procurement. That is not consistent with the County Judge's duties under the law, and this Court cannot constrain the County Judge's statutory authority.

27. As to Petitioner's claim for declaratory judgment, any judgment entered by this Court would operate to control the action of the State. Therefore, the declaratory judgment claim is barred by sovereign immunity. *See, e.g.*, *Ark. Lottery Comm'n v. Alpha Mktg.*, 2013 Ark. 232, at 6, 428 S.W.3d 415, 420 ("Because a judgment for Alpha would operate to control the action of the State or subject it to liability, the suit is one against the State and is barred by the doctrine of sovereign immunity.")

4

28. To avoid the application of sovereign immunity, Petitioner urged that the County Judge's actions were arbitrary and capricious, which is an exception to the defense of sovereign immunity.

29. The Court finds that the County Judge's denials were arbitrary and capricious.

30. The County Judge is enjoined from arbitrarily or capriciously rejecting claims for payment submitted by the Sheriff's Department, but instead must be reasonably consistent, fair and predictable.

31. The basis for denial of any claim must be clearly stated such that the Sheriff is able to correct the deficiency and avoid similar deficiencies going forward.

32. The Sheriff and the County Judge, or their respective department representatives, shall promptly confer concerning denied claims to ensure timely resolution for the benefit of effective and efficient county government operations.

33. Failure to abide by this Order may subject the violator to a finding of contempt and further appropriate action.

On April 5, 2024, Sheriff Woods filed a petition for contempt claiming that Judge Robinson had arbitrarily and capriciously denied twenty-seven claims for payment in violation of the court's November order.[1] The circuit court held a hearing on the petition on June 28.

II. *Contempt Hearing*

Sheriff Woods's office manager, Chris Brown, testified that he had been in his current position for eleven years and that his duties included submission of the sheriff's department's bills for payment by the county judge. He said most of the recently disallowed

---

[1]Of the twenty-seven claims, twenty of the claims were denied before entry of the November order and seven were denied on or after entry of the November order. The parties agree that only those seven claims are relevant to this contempt action.

claims had arisen in situations in which the creditor had included the main address for the sheriff's department on an invoice when the expense was for one of the sheriff's department's divisions. Brown said that a creditor, particularly a large creditor like Amazon, generally has one address for the sheriff's department, although there are multiple divisions and budgets within the department. Brown gave the example of an invoice for an item purchased for the jail that includes at the top of the invoice the main address of the sheriff's department. He said that the invoice also includes the proper budgetary code, the appropriate department, and an affidavit authorizing payment from the proper budget—in this example, the jail—but it is addressed to the sheriff's department rather than to the jail. Brown explained that the county judge had denied payment because the address of the jail is not the address listed on the invoice. He said the issue had continued after the November order and was an ongoing problem. According to Brown, the sheriff's department had been unable to use the Amazon account this year because of nonpayment due to these address issues.

He explained that the county judge had also denied payment for a hotel for a conference. The claim was denied because it was "turned in too soon." The denial stated that the claim could be resubmitted after the conference had been attended, and then it would be paid.

Finally, Brown said that payment for a claim in which he had failed to separate sales tax from the items being expensed had also been denied. He said he had never been required to do that before, and to his knowledge, he knew of no other Jefferson County department that had been required to separate taxes from different line items before a claim would be

6

paid. He said there was no line item in the sheriff's department budget for taxes. He said the budget requested by the sheriff's department from the quorum court anticipates that it will include taxes within and as part of the various budgeted expenses.

Brown testified that in light of these examples, he thought the county judge was treating the sheriff's department differently than it treated other departments and referenced a report listing all the county's disallowed claims. All of them were from the sheriff's department.

Tiffany Lowery testified that she worked in the Jefferson County Clerk's Office. She had been in the clerk's office for nine years and had been the chief deputy clerk for the past seven years. She said claims for payment are first submitted to the clerk's office and then forwarded to the county judge's office for authorization. She said both denied and approved claims are then returned to the clerk's office, which submits the approved claims to the treasurer's office. The treasurer issues a check that is sent to the clerk's office for mailing.

Lowery agreed with Brown that the county judge has been treating the sheriff's office differently from other departments. She testified that the denied claims are usually brought to her for review and that the majority of the claims are for the sheriff's office. She referred to the list of disallowed claims for the county that included only claims submitted by the sheriff's department. No other claims had been disallowed.

Lowery provided an example of a claim that was denied for attendance at a conference because it was submitted too early. She said that, to her knowledge, that had never happened; in fact, she said that the clerk's office encourages departments to submit such claims as soon

as possible so they have the funds to use for the trip. She also testified that she had never seen taxes separated as a separate line item and had never seen a claim for payment denied for failure to separate out taxes. Finally, she said that several departments have multiple budgets, and there has never been a requirement that an invoice for an item budgeted to one division include that division's address rather than including the address of the department. Lowery said she did not think Rosetta Giddens, the person who reviews claims for Judge Robison, was competent. Lowery opined that Giddens lacked critical thinking skills in the claims-department area, there was no basis for many of the claims she denied, and many of the denials were arbitrary.

Judge Robinson's counsel introduced a letter signed by Judge Robinson's chief of staff, Giddens, that was sent on December 1, 2022, to all department heads in the county. The letter explained that requests for payment of claims should include the "correct fund, department, account, [and] one address who's receiving the service[.]" The letter also stated that if the department had several budgets under its "umbrella," the department should make sure to include the correct division's address and the proper budget and not to pay two different claims out of the same budget. The letter concluded: "Please, do not cross budget, in other words."

Giddens testified that her duties as Judge Robinson's chief of staff included reviewing claims submitted for payment. She testified that she has a Bachelor of Science in Accounting, a master's degree in finance, and a master's degree in health administration. She said that she had been a state auditor for seven years before becoming Judge Robinson's chief of staff.

8

She said that the problem with many of the sheriff's department's claims was its failure to have the vendor issue a separate invoice for each division in the sheriff's department. She explained that the invoice should include the division's name and address at the top of the invoice and the expenses for that particular division. Instead, the sheriff's department would submit one invoice for a variety of expenses related to more than one division and then note on the invoice which expenses were to be paid from which budget. She said it was also a problem even when the invoice contained expenses for only one division when the invoice was addressed to the sheriff's department's main address rather than to the address of the particular division. She said it is simply not sufficient to designate on each invoice what division or budget covers what expense. She testified that there must be a separate invoice for each expense, and the department must ask the vendor to resend separate invoices properly addressed when this does not occur. Although Giddens admitted that the list of disallowed claims for the period from January through June 2024 included only claims submitted by the sheriff's department, Giddens told the court that she disagreed with Lowery's statement that other departments were being treated differently from the sheriff's office and that the county judge was paying claims when a department submitted a single invoice that included multiple claims that were paid from different budgets. She explained that all the other departments submitted the requests correctly.

She also testified that the request submitted by the sheriff's department for a conference was denied because "usually when you go on a trip, or you [are] going to a conference or something, usually you will go ahead and go to the conference, and when you

come back, then we will reimburse you." Because the request for payment was submitted in March and the conference was not until May or June, she told the sheriff's office to resubmit it closer to the date of the conference. When the court asked Giddens, "How close does it have to be?" She responded, "[I]t should be at least a month. Because usually when you do conferences, you pay already with your credit card, so that shouldn't be an issue." She explained that it is generally done by requesting reimbursement after the fact—that is, "you don't get paid up front." When the court again asked what the policy was for claims submitted beforehand, Giddens said there was no written policy, but she had decided with her "supervisor" that it should be within a month. When the court asked if every department knew about this policy, Giddens said the sheriff's department's recently denied hotel-reimbursement claim was the first time since she began her position in 2022 that a department had submitted a request before the conference. The court noted that this testimony was inconsistent with Lowery's testimony.

Giddens admitted that some of the claims submitted by and paid on behalf of the county judge's department had not been scrutinized as closely as those of the sheriff's department. In fact, several invoices directed to the county judge had multiple divisions or budgets from which the expenses on one invoice were being paid. Giddens was unable to explain why such invoices had been paid for the county judge's department but would have been denied had they been submitted by the sheriff's office. She agreed that it was inconsistent. When asked why an invoice was paid for the county judge's attorney's fees when the invoice had no address on it, she explained that she worked for the county judge,

10

"so I know if it's from the county judge – I know what address it is." Counsel for Sheriff

Woods continued to question Giddens:

[COUNSEL]: Are you trying to tell this court that you don't know the addresses for the sheriff's office and for the county jail -- is what you're trying to tell the judge?

[GIDDENS]: No. I know the addresses to the county sheriff's office and the county jail.

[COUNSEL]: So under the same rationale that you just said you could have also -- those other bills that had the wrong bill-to, ship-to addresses, you could have approved those just as easily, couldn't you?

[GIDDENS]: No.

[COUNSEL]: Well, you just said you knew the address.

[GIDDENS]: Yeah, I do know the address, but it's not on their invoice.

[COUNSEL]: It's not on this invoice, ma'am, and you paid this.

[GIDDENS]: Sir, how do you know I paid it?

[COUNSEL]: Because you just said it.

[GIDDENS]: No, I didn't say -- you asked me about this invoice. And you asked me was this being paid from the county judge's office -- I already told you that we have another lady in my office that does claims as well.

[COUNSEL]: Ma'am, what is the code 107?

[GIDDENS]: That is quorum court.

[COUNSEL]: Okay. Show me anywhere on this bill where you see the words quorum court.

[GIDDENS]: Quorum court is not on here.

11

[COUNSEL]: Okay. And show me where that bill was rejected because it was coded wrong.

[GIDDENS]: It's not rejected; it was paid.

[COUNSEL]: All right.

[GIDDENS]: And I do believe -- I would have to let the judge talk on this right here -- but that is from the quorum court, and I do believe it was somebody that had something to do with the quorum court. A bill came from the quorum court, but I will let the judge talk on that -- I don't know.

[COUNSEL]: Your Honor, I would ask that what I marked for identification purposes as Plaintiff's Exhibit F be introduced into evidence.

[An invoice for attorney's fees was introduced into evidence]

[COUNSEL]: And again, 107 is quorum court, right?

[GIDDENS]: Yes.

[COUNSEL]: And not county judge?

[GIDDENS]: No. County judge is 100.

. . . .

[COUNSEL]: Ma'am, I'm showing you what I'm marking for identification purposes as Plaintiff's Exhibit G. I would like for you to take a look at that and tell me what it is.

[GIDDENS]: Pivot Legal Services; Invoice Bill-to Judge Gerald Robinson, County Judge's Office, 101 West Barraque, Pine Bluff, Arkansas 71601.

[COUNSEL]: What is Judge Robinson's code -- do you see those numbers down there on the affidavit authorizing payment -- what is his code -- is it 107 or is it 100?

[GIDDENS]: No. It's the quorum court, 107.

12

[COUNSEL]:    All right. So this bill was billed to the county judge by Pivot and it was paid out of the quorum court. Why wasn't it kicked back, and why wasn't Pivot called and said we're going to need you to put the right bill-to address?

[GIDDENS]:    Again, I would have to let the judge speak on this one.

Judge Robinson then testified that he had not given anyone in his department directions to treat the sheriff's department differently from other departments. He could not explain why requests for payment for his department had been paid when coded incorrectly, when the invoice did not have a proper address, or when the division from which the bill was being paid was not on the invoice. He admitted that the claims for the sheriff's department had been disallowed in such instances while claims for his department had not. Judge Robinson explained that sometimes addresses matter, and sometimes they do not.

In an order entered July 15, the circuit court found that Judge Robinson was in contempt of the November order for "continu[ing] to treat the processing of claims for payment by the office of Jefferson County Sheriff Lafayette Woods, Jr., differently than claims for payment from any other Department of Jefferson County, and ha[s] done so in an arbitrary and capricious manner." The court made the finding after "particular consideration of the testimony of" Lowery and Giddens and further found that the other evidence introduced at the hearing supported a finding of contempt. As a sanction, the circuit court ordered Judge Robinson to pay $6,700 in attorney's fees and costs to Sheriff Woods.  Judge Robinson filed this appeal.

III. *Standard of Review*

13

To establish civil contempt, there must be willful disobedience of a valid order of a court. *Albarran v. Liberty Healthcare Mgmt.*, 2013 Ark. App. 738, at 4, 431 S.W.3d 310, 313. However, before one can be held in contempt for violating a valid order, the order must be definite in its terms and clear as to what duties it imposes. *Shahid v. Masood*, 2026 Ark. App. 151, at 32. The standard of review for civil contempt is whether the finding of the circuit court is clearly against the preponderance of the evidence. *Ingle v. Ingle*, 2013 Ark. App. 660, at 2. In our review, we defer to the superior position of the circuit court to determine the credibility of witnesses and the weight to be given their testimony. *Albarran*, 2013 Ark. App. 738, at 4, 431 S.W.3d at 313.

## IV. *Discussion*

Judge Robinson first contends that the November order was not sufficiently clear to serve as the basis for a finding of contempt. He argues that the November order provided no specific guidance as to what conduct the circuit court would consider to be arbitrary and capricious and, therefore, contemptuous, pointing specifically to the court's conclusion that the county judge is called upon to "exercise his discretion and his official judgment" in reviewing claims. He contends that no law or government manual provides specific guidance regarding how this discretion is to be exercised and that the November order merely provides that his review of claims must be "reasonable, consistent, fair and practicable," offering no

additional guidance or instructions. He argues that because the order was not clear in what conduct was proscribed, he could not have willfully disobeyed it.[2]

While recognizing that Judge Robinson's review of payment claims involved discretion and judgment, the circuit court found in its November order that the basis for his denial of claims was "not always consistent," that "[n]o other department in Jefferson County government [other than the sheriff's department] was subject to similar inconsistent denial of submitted claims," and that Judge Robinson's denials of the sheriff's department's claims were arbitrary and capricious. The court's order was clear in its directive to Judge Robinson: "The County Judge is enjoined from arbitrarily or capriciously rejecting claims for payment submitted by the Sheriff's Department, but instead must be reasonably consistent, fair and predictable." At a minimum, the court ordered Judge Robinson to be consistent and not to treat the sheriff's department's claims differently from the claims submitted by other departments.

The evidence presented at the hearing was undisputed that the claims submitted by the sheriff's department were the only claims that were continually disallowed. Moreover, Giddens provided the alleged reasons for denying claims submitted by the sheriff's department—incorrect codes, addresses, or departments or multiple claims from different departments on one invoice—but then admitted that claims from the county judge's

---

[2]To the extent Judge Robinson is arguing that the circuit court failed to make a finding that his conduct was willful, we reject it. Unless the contrary can be shown, we presume that the circuit court acted properly and made such findings of fact as were necessary to support its judgment. *Wyatt v. Wyatt*, 2018 Ark. App. 177, at 7, 545 S.W.3d 796, 802.

15

department had been paid despite having the same errors. Lowery, a neutral third party, testified that she had worked as a county clerk for nine years and that the reasons given by the county judge for denying the sheriff's department's claims had never previously been used as reasons for denial and were not being used when the county judge evaluated and processed claims from other departments. Both Lowery and Brown, who had many more years of experience in processing claims than did either Judge Robinson or Giddens, testified that Judge Robinson was treating the sheriff's department differently than other departments. It is the circuit court's duty to determine the credibility of witnesses and the weight to be given their testimony, not ours. *Albarran*, 2013 Ark. App. 738, at 4, 431 S.W.3d at 313. Accordingly, we reject Judge Robinson's argument that the November order was not sufficiently clear to serve as the basis of a contempt finding.

Judge Robinson also argues that his denials of the sheriff's department's claims for payment were not arbitrary and capricious because there were rational bases for the denials. He claims that a letter sent to all department heads included instructions for submission of payment claims and that the denials were consistent with those instructions. He argues that the sheriff may disagree with the denials, but because the reasons for the denials were rational and because the sheriff's department had been notified of the reasons, the denials were not arbitrary and capricious. He claims, therefore, that the circuit court erred in finding that the denials on these bases were arbitrary and capricious.

However, it is not the reasons for the denials—for example, having the main address for the sheriff's department listed on the invoice if the expense is for the jail or juvenile

16

division, failing to include the proper budget code on the invoice, or submitting a payment request before a conference rather than seeking reimbursement after the conference—that the circuit court found to be arbitrary and capricious. It was the fact that the reasons were applied inconsistently and unfairly only to the sheriff's department's claims. In fact, the evidence was undisputed that the county judge's office itself submitted claims with the same deficiencies, and the claims were paid. Thus, the circuit court's finding that Judge Robinson's denial of the sheriff's department's claims was arbitrary and capricious is not clearly against the preponderance of the evidence.[3]

Affirmed.

HARRISON and TUCKER, JJ., agree.

*Castleberry Law Firm, PLLC*, by: *Kenneth P. "Casey" Castleberry*, for appellant.

*Branch, Thompson, Warmath, Dale & Butler, a Professional Association*, by: *Adam H. Butler*, for appellee.

---

[3]We note that Judge Robinson framed the issues in this case during oral argument as matters of politics between the county judge and the sheriff, suggesting that the courts were not the appropriate forum to resolve them. The issue here is contempt of a valid court order. Contempt is a matter between the court and the litigant and not between the two opposing litigants. *Hitt v. Lyle*, 2020 Ark. App. 124, at 17, 596 S.W.3d 540, 551. The circuit court's finding of contempt is not clearly against the preponderance of the evidence.